[Civ. No. 2561. Fourth Appellate District.—August 19, 1940.]

CHARLES SWANSON, Respondent, v. P. W. McAULIFF, Appellant.

Claflin, Dorsey & Campbell for Appellant.

Wagy & Hulsy for Respondent.

BARNARD, P. J.—This is an action to recover for services alleged to have been performed, as a caretaker of a mining property, under a memorandum dated March 9, 1936, reading:

"Myself P. W. McAuliff, owner of the White Mine, this day has made arrangements with Mr. Swanson to be at the mine & in event the mine is sold I am to pay Shorty $3.00 per day & if the mine aint sold he is to receive no pay.

"Chas Swanson."

The court found that the mine had been sold, findings being filed on January 15, 1940, followed by a judgment on January 22, 1940. A minute entry shows that a motion for a new trial was denied on February 20, 1940. Notice of appeal from that judgment was filed on March 2, 1940. Amended findings and a modified judgment were filed on March 6, 1940. An appeal from this judgment was filed on March 16, 1940. The two appeals have been consolidated and presented upon one set of briefs.

The entire controversy is as to whether this mine was "sold" within the meaning of the memorandum agreement under which the services were performed. The appellant contends that this agreement should be interpreted as providing that the services were not to be paid for unless and

until a completed sale of the mine was consummated. The respondent contends that nothing more than a "contract of sale" or "agreement of sale" was required, and that upon the execution of an "agreement of sale, and delivery of possession of the mine to the buyers, the mine was 'sold', within the meaning of the contracting parties". The respondent relies on the case of *Eaton* v. *Richeri*, 83 Cal. 185, where services were not to be paid for until mining property was sold or until a sum sufficient to pay for the services was realized from the mine. After the services were performed the defendant entered into a contract to sell the mine and received a partial payment which was more than sufficient to pay the claim of the plaintiff. The court sustained a judgment for the plaintiff saying that the time for payment arrived when the contract to sell was entered into and the partial payment was received. That case is not very helpful here unless the agreement now before us should be interpreted as providing for payment only out of funds arising from a sale of the mine. While the language used would lend considerable support to such an interpretation it is not necessary to pass upon the question thus suggested.

In view of the record before us, it is also unnecessary to decide whether this employment agreement should be interpreted as referring to a completed sale of the mine or to the entering into of an agreement to sell the same. If it be conceded that the latter interpretation is in accordance with the intention of the parties and should prevail, it is still true that an "agreement" to sell was required, in any event. Even under that interpretation it can not reasonably be supposed that the parties had in mind and referred to anything other than the usual mutual agreement whereby one person agrees to sell certain property and another person agrees to buy the same, that is to say, a valid subsisting agreement for the sale and purchase of the property.

In this connection the court found in its original findings that the "defendant entered into a written agreement with Arthur O. Borks and Nick Lippolis, whereby defendant agreed to sell said mining claims to said Borks and Lippolis, who agreed to buy said claims from defendant". In its amended findings this was stricken out and in lieu thereof the court found that the appellant entered into a written agreement with these parties whereby he "agreed to sell said mining claims in Borks and Lippolis" and that, thereupon,

he "did sell and deliver possession of said mining claims to said Borks and Lippolis". We think neither of these findings, in so far as a sale which was within the meaning of the employment agreement is concerned, is supported by the evidence.

The only evidence which could have any tendency to support these findings consists of an instrument signed by the appellant under date of April 24, 1937, which was introduced into evidence. This instrument is entitled "Bond-Lease". It provides that the appellant is bound unto Arthur O. Borks and Nick Lippolis in the penal sum of $50,000 on the conditions named. It recites that the first party has agreed to sell to the second parties the mining claims here in question for $50,000, which is to be paid in certain future instalments, that the second parties are to be given possession of said mining property and the right to remove ore therefrom, and that they are to turn over to the appellant 10 per cent of the gross receipts and do certain other things which are set forth. It is then provided that the obligation is such that if the second parties fail to comply with any of the terms of the agreement, time being of the essence, the obligation shall be null and void. This instrument was not signed by Borks or Lippolis or by anyone except the appellant, and there is no evidence that Borks or Lippolis or anyone else ever agreed to be bound by the terms of this instrument or ever agreed to purchase the mining property in any way.

This instrument is nothing more than a unilateral agreement, at best, and in legal effect it constituted merely an option to purchase the property which the other parties referred to were free to exercise or not, as they chose. There is no evidence that they ever exercised this option or paid anything to the appellant. ■■ While there is evidence that they entered into possession of the property and later gave it up, this is entirely consistent with their rights under the option and is in no way sufficient to show that they agreed to purchase the property or became bound to pay for it. It is well known that mining options are frequently given with the right of entry for the very purpose of enabling the optionee to make tests and take other steps in order to determine whether or not he desires to exercise the option.

Some claim is made that the fact that the appellant at one time handed the respondent $54 indicates that the appellant

recognized that a sale had been made, and that he was presently obligated to the respondent for the full amount claimed. While the respondent testified that the appellant handed him $54, he did not state that this was on account of the services here in question and the transcript indicates that this was paid in September, 1936, some months before this agreement was made. The appellant testified that he had never sold this mine, that he still owned it, that he was still trying to sell it, and that he intended to pay the respondent as soon as he succeeded in selling it. There is no evidence to the contrary except the instrument of April 24, 1937, to which we have referred. The evidence is insufficient to establish a sale of this mining property within the meaning of the employment agreement of March 9, 1936.

A further point raised by the appellant to the effect that the court had lost jurisdiction to enter the modified judgment need not be considered. Both judgments relate to the same obligation and what we have said applies to either or both, and neither should be allowed to stand, under the evidence now appearing, since a burden would thus be placed upon the appellant which he did not assume through his agreement with the respondent.

The judgments appealed from are reversed.

Griffin, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 17, 1940.